IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:06-CV-64-H(3)

| | | |
|---|---|---|
| WESTERN WORLD INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) ) ) ) ) ) | |
| v. | ) ) ) ) ) ) ) | **ORDER** |
| JASON D. WILKIE, et al., | ) ) ) | |
| Defendants. | ) | |

This matter is before the court on plaintiff's motion for summary judgment [DE #87] and motions for summary judgment filed by three separate groups of defendants [DE #68, 89, 91]. Appropriate responses and replies have been filed, and the time for further filings has expired. The parties' positions were well-represented at oral argument on October 3, 2007. This matter is ripe for adjudication.

### **STATEMENT OF THE CASE**

The parties seek a declaration of plaintiff Western World Insurance Company's obligation under a commercial general liability policy ("the Crossroads Policy") issued to defendant Jason Wilkie d/b/a Cross Roads Farms and/or Crossroads Farm Petting Zoo ("Crossroads"). All of the defendants but Crossroads are minors

who were allegedly injured as a result of exposure to *E.coli* 0157:H7 ("*E.coli*") during their visits to Crossroads' petting zoo exhibit at the 2004 North Carolina State Fair (and their guardians ad litem).[1] Most if not all of these defendants are pursuing negligence actions against Crossroads which are currently pending in state court. The only issue now before this court is whether the minor defendants' exposure to *E.coli* constitutes a single occurrence or multiple occurrences under the terms of the Policy. The Policy has a limit of $1,000,000 per occurrence and a $2,000,000 general aggregate limit. In its complaint, as amended, plaintiff seeks a declaration that the *E.coli* "outbreak" was a single occurrence, and that the $1,000,000 limit is therefore applicable. Through a variety of counterclaims and cross-claims, defendants urge the court to declare the minors' individual exposures to *E.coli* to be multiple occurrences under the Policy, requiring plaintiff to provide coverage up to the $2,000,000 aggregate limit. The case is before the court on cross-motions for summary judgment.

**STATEMENT OF THE FACTS**

Within the confines of this case, plaintiff does not dispute defendants' factual contentions, drawn largely from the complaints in the underlying state court tort actions:

---

[1] Default has been entered against Crossroads. (Clerk's Entry of Default, June 20, 2007 [DE #102].) For convenience, the court refers to the remaining defendants simply as "defendants."

Crossroads owned and operated a petting zoo at the North Carolina State Fair from October 15-24, 2004. *E.coli*, a harmful bacteria contained in animal feces, was detected at various sites at the State Fair, including Crossroads' petting zoo. Over the course of the ten-day fair, each minor defendant was exposed to *E.coli* as a result of contact with animals during visits to the petting zoo. Each minor defendant's exposure to *E.coli* resulted in injury, and the parties have agreed for the purposes of this matter that crossroads' negligent acts and omissions proximately caused the injuries.

The Policy provides that "[The] Each Occurrence Limit is the most we will pay . . . because of all 'bodily injury' and 'property damage' arising out of any one 'occurrence.'" (Compl. Ex. C. at 25.) Under the terms of the Policy, an "occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." (Id. at 29.) As noted above, the Policy has an "Each Occurrence Limit" of $1,000,000, and a "General Aggregate Limit" of $2,000,000. (Id. at 4.)

## COURT'S DISCUSSION

### I. Standard of Review

Summary judgment is appropriate pursuant to Rule 56 of the Federal Rules of Civil Procedure when no genuine issue of material fact exists and the moving party is entitled to judgment as a

3

matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden, the non-moving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248, but "must come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)). As this court has stated, summary judgment is not a vehicle for the court to resolve disputed factual issues. Faircloth v. United States, 837 F. Supp. 123, 125 (E.D.N.C. 1993). Instead, a trial court reviewing a claim at the summary judgment stage should determine whether a genuine issue exists for trial. Anderson, 477 U.S. at 249.

In making this determination, the court must view the inferences drawn from the underlying facts in the light most favorable to the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962) (per curiam). Only disputes between the parties over facts that might affect the outcome of the case properly preclude the entry of summary judgment. Anderson, 477 U.S. at 247-48. Accordingly, the court must examine "both the materiality and the genuineness of the alleged fact issues" in ruling on this motion. Faircloth, 837 F. Supp. at 125.

4

## II. Standard For Declaratory Judgment

"In a case of actual controversy within its jurisdiction ... any court of the United States, upon filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). As long as the court has subject matter jurisdiction over the case, it is within the court's discretion whether to assert jurisdiction over declaratory judgment actions. See Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co., 139 F.3d 419, 422 (4th Cir. 1998). The parties are properly diverse and the amount in controversy sufficient for this court to exercise subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Because the issue presented to this court is one appropriately settled through declaratory judgment, the court will exercise its discretion to examine the controversy.

## III. Analysis

This court, sitting in diversity, applies the choice of law rules of North Carolina. See Hitachi Credit America Corp. v. Signet Bank, 166 F.3d 614, 623-24 (4th Cir. 1999); see also Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941). "Because the policy at issue was executed in North Carolina, the law of that forum controls." Rogers v. Penn Nat. Ins. Co., 193 Fed.Appx. 263, 265 (4th Cir. 2006) (unpublished) citing Tanglewood Land Co. v. Byrd, 299 N.C.

5

260, 261 (1980). The question before the court is, if not an entirely novel question under North Carolina law, one that lacks substantial precedent upon which to base a decision. The court, therefore, bases its ruling on the available precedent from the courts of the State of North Carolina and the persuasive rulings of courts that have confronted similar questions.

**A. The North Carolina Standard For "Single Occurrence."**

"[A]n insurance policy is a contract and its provisions govern the rights and duties of the parties thereto." Fidelity Bankers Life Ins. Co. v. Dortch, 318 N.C. 378, 380 (1986). Where a term is defined by a policy, the court will give effect to that definition. Gaston County Dyeing Mach. Co. v. Northfield Ins. Co., 351 N.C. 293, 299 (2000). In considering a definition of occurrence nearly identical to the one in question[2], the North Carolina Supreme Court noted no ambiguity in the policy language and declined to interpret the policy against the insurer. See id. at 300-02.

In Christ Lutheran Church v. State Farm Fire and Cas. Co., the North Carolina Court of Appeals adopted "the general rule that an occurrence is determined by the cause or causes of the resulting injury." 122 N.C. App. 614, 617 (1996) (internal quotations

---

[2] The policy in question in Gaston County defined an occurrence as "an accident, including continuous or repeated exposure to substantially the same harmful conditions...." The only difference between the two policies is that the Crossroads Policy concludes its definition with "... same _general_ harmful conditions."

6

omitted). This is known as the "cause test." The court in <u>Christ Lutheran</u>, interpreting policy language that was somewhat different than the Crossroads Policy, was faced with an instance of employee theft. The church's treasurer embezzled over $32,000 in church funds by issuing twenty-four (24) separate checks over the course of several weeks. <u>Id.</u> The court labeled this a "continuum of wrongful actions" by the employee, and limited recovery to the per occurrence limit of $5,000. <u>Id.</u>

The parties agree that the court should use the cause test, but differ as to the proper method of its application. Defendants urge the court to see Crossroads' various acts of negligence (e.g., failure to properly clean the zoo area, failure to use a barricade to separate the animals from the children, failure to prevent hand-to-mouth activities, inadequate signage, and failure to provide proper hand washing stations) as separate causes. Plaintiff, however, characterizes its insured's actions as a single continuum of negligent acts.

Defendants' position is most persuasively argued by the Rolan defendants. Rolan defendants recognize a distinction in the way courts have interpreted "occurrence" under the cause test. Some courts (1) examine the earliest proximate cause, while others (2) focus on the incident giving rise to liability. (Rolan Mem. at 10 [DE #92]). Rolan defendants argue that the earliest proximate cause approach is appropriate in cases where multiple injuries

7

emanate from a single defect, such as in manufacturing cases. This would presumably include cases such as Gaston County, *supra*. Rolan defendants urge this court to focus on the incident(s) that gave rise to liability, and cite a line of cases where the court found multiple occurrences under policies similar to the Crossroads' policy. See Donegal Mututal Ins. Co. v. Baumhammers, 893 A.2d 797 (Pa. Super. Feb. 17, 2006), *petition for appeal granted* 589 Pa. 248 (2006) (parents who negligently made guns available to their son liable for multiple occurrences because son shot multiple victims at his school, and no injury was suffered until bullets were fired); Koikos v. Travelers Ins. Co., 849 So.2d 263 (Fla. 2003) (restaurant sued for failure to provide security after patron went on shooting spree); S.F. v. West American Ins. Co., 250 Va. 461 (1995) (negligent hiring, supervising, and retention of employee who molested children); Soc'y of the Roman Catholic Church of the Diocese of Lafayette and Lake Charles, Inc. v. Interstate Fire & Cas. Co., 26 F.3e 1359 (5th Cir. 1994) (negligence in failing to prevent priest from molesting children); H.E. Butt Grocery Co. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 150 F.3d 526 (5th Cir. 1998) (applying Texas law) (negligence of employer in hiring and supervision of employee leading to molestation of two children resulted in multiple occurrences).

Plaintiff responds to the Rolan defendants' theory arguing that, rather than an alternate way of applying the cause test,

8

these cases are examples of a misapplication of the test. Assuming without deciding that this alternate method describes a viable application of the cause test under North Carolina law, the court finds it inapplicable to the instant case. The cases cited above by Rolan defendants involve suits against an insured based on the insured's relationship to a third party <u>intentional</u> tortfeasor, creating a fundamental distinction between defendants' cited cases and the one at bar. Furthermore, the interpretation advanced by defendants is inconsistent with the application of the cause test in <u>Christ Lutheran</u> as it is applied in <u>Gaston County</u>, discussed below. Finally, the court is simply unpersuaded by the rationale in the two other cases upon which Rolan defendants primarily rely, <u>Maurice Pincoffs Co. v. St. Paul Fire & Marine Ins. Co.</u>, 447 F.2d 204 (5th Cir. 1971) (insurer of importer of bird seed liable for eight occurrences where there were eight sales to distributors), and <u>Mason v. Home Ins. Co. of Illinois</u>, 177 Ill. App. 2d 454 (1988) (each sale of tainted onions by restaurant constituted separate occurrence).

## IV. Applying the <u>Gaston County</u>-<u>Christ Lutheran</u> Cause Test

The Supreme Court of North Carolina applied reasoning similar to that found in <u>Christ Lutheran</u> when it decided <u>Gaston County</u>. In <u>Gaston County</u>, a leaky pressure vessel resulted in the contamination of multiple lots containing sixty tons of media contrast dye over the course of two months. 351 N.C. at 301, 303.

9

The court concluded that when "the accident that causes an injury-in-fact occurs on a date certain and all subsequent damages flow from the single event, there is but a single occurrence...." Id. at 304. Although the court in Gaston County cited the existence of a "date certain" as a reason to find a single occurrence, that does not mean that the injury must take place at a single date or time. Indeed, the pressure vessel leaked for months, and contaminated multiple lots. Similarly in this case, the petting zoo remained a source of *E.Coli* contamination throughout its operation, and multiple children were exposed as a result.

A review of the caselaw applying the cause test reveals a line of cases involving toxic torts and asbestos whose analyses are helpful in deciding this matter. In Sunoco, Inc. v. Illinois Nat. Ins. Co., 226 Fed.Appx. 104 (3rd Cir. 2007) (unpublished), the Third Circuit examined claims arising from exposure to a harmful gasoline additive. The plaintiffs presented evidence that they were exposed through multiple incidents, in multiple places, and at different times. Id. at 108. Those plaintiffs also alleged that their exposure resulted from hazardous manufacture and a failure to warn. Id. Nevertheless, the court found that the plaintiffs were injured by exposure "to the same general harmful condition-gasoline containing MtBE-which resulted in contaminated ground water." Id. The court explained that "as long as the injuries stem from one

10

proximate cause there is a single occurrence. The number and magnitude of the injuries and the number of plaintiffs do not affect the determination." Id. at 107 (internal quotations and citations omitted). See also Chemstar, Inc. v. Liberty Mut. Ins. Co., 41 F.3d 429 (9th Cir. 1994) (failure to warn of product's unsuitability for indoor use resulted in one occurrence; use by twenty-eight plaintiffs did not result in multiple occurrences); Appalachian Ins. Co. v. Liberty Mut. Ins. Co., 676 F.2d 56 (3rd Cir. 1982) (multiple instances of discrimination were not multiple occurrences; promulgation of discriminatory policy was single occurrence); Uniroyal v. Home Ins. Co., 707 F.Supp. 1368 (E.D.N.Y. 1988). (single occurrence was manufacturer's delivery of "Agent Orange" to military).

This court also finds persuasive Fireman's Fund Ins. Co. v. Scottsdale Ins. Co., 968 F.Supp. 444 (E.D. Ark. 1997), where the court was forced to decide how many occurrences resulted, under language identical to Crossroads' Policy, from hundreds of sales of allegedly tainted food. That court concluded that a single cause arose from the "negligent preparation/handling/storage of the food." Id. at 448. The court rejected arguments that mirror those of the minor defendants; specifically, that multiple related acts of negligence could give rise to multiple occurrences. See id.

This court must predict what would be the ruling of the courts of North Carolina if confronted by the same issue. See C.I.R. v.

11

Bosch's Estate, 387 U.S. 456, 464-65 (1967). The court is bound by the rulings in Gaston County and Christ Lutheran, and has examined the opinions of various other courts. In this instance, it is impossible to determine exactly how each individual defendant was exposed. The most that can be reliably known is that each defendant was exposed to and contracted *E.Coli* as a result of their visits to the petting zoo. The presence of *E.Coli* at the petting zoo is the general harmful condition to which defendants were exposed, and the cause of this condition was Crossroads' ongoing negligence. While the court is sympathetic to the plight of the minor defendants and their guardians ad litem, the court must conclude, based on its analysis of the available authorities, that if the Supreme Court of North Carolina were presented with this question it would conclude there was but a single occurrence.

Therefore, the court finds that defendants' exposure to *E.Coli* constitutes a single occurrence under the terms of the Crossroads Policy.

## CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment [DE #68, 89, & 91] are DENIED, and plaintiff's motion for summary judgment [DE #87] is GRANTED.

It is hereby ORDERED, ADJUDGED, AND DECLARED that plaintiff Western World Insurance Company's liability for payment of any damages recovered by defendants in the underlying tort actions against plaintiff's insured is capped by the single occurrence limit as defined in the Crossroads Policy.

The clerk is directed to close the case.

This _1st_ day of November 2007.

MALCOLM J. HOWARD
Senior United States District Judge

At Greenville, NC
#32